May it please the Court. I'm David Schultz. This is Jeff Mausner, and we represent Plaintiff and Appellant Perfect 10. Perfect 10's President, Dr. Norman Zeta, is also here. I would like to reserve ten minutes for rebuttal. The District Court committed perhaps its most critical error in this case by invalidating every Perfect 10 Group C notice without properly examining or analyzing each type of notice. The Court incorrectly applied the requirements of the DMCA. It erroneously ruled that each notice failed to identify the copyrighted work claimed to have been infringed and was too burdensome. It approved the Group B notices. It approved In form, so some of them were not complete, but in form, it approved the Group B notices. Correct, Your Honor. It approved certain unidentified Group B notices. And as we stand here today, we don't know which Group B notices the District Court believed was complying and which were not. But you are correct that the form of the Group B notices was approved by the District Court. Could you save yourself by the part of a minute by just saying yes? Could I get back to the preliminary injunction motion? Because that is really what is before us, and we get to DMCA only if it's inextricably intertwined. Now, on that, the District Court said, assume that there was constructive notice. Because of the nature of the information in the drives that were given to Google, there weren't simple measures. It wasn't sufficiently directive to Google, so there weren't simple measures for blocking those URLs. Now, what was wrong with that analysis? It says there are eight steps, there are ten steps that Google would have to do in order to find the appropriate URL. Well, Your Honor, there are several problems with that analysis. First of all, we submitted evidence that one of the things that Google would have been able to do was to use image recognition technology in order to be able to remove infringing images. We had two technical experts who submitted declarations to that effect, and it was not controverted by Google. Now, the District Court said the only thing before me is the ZADA declaration, and that's speculative, I think, is what he said. So were the other declarations, your – I think it was – I've forgotten his name – of the experts, were they before the District Court? Were they brought to the District Court's attention? Yes, Your Honor. They were submitted to the District Court. Those declarations, I believe it was – it was the O'Connor, Chimura, and McFadden. Two of those declarations specifically addressed those issues. They were submitted with a summary judgment motion and resubmitted in connection with the P.I. motion. In addition, Your Honor, the – we submitted 95 what we've referred to as P.I. notices in connection with the preliminary injunction motion. Those were very simple notices, in many cases involving a few numbers of images, and the District Court simply did not even turn to look and see whether there were very simple measures that could have been used to eliminate the infringing material on those notices, because it never, as far as we can tell, even addressed those particular notices in connection with the preliminary injunction motion. It simply took its underlying ruling with respect to notices in the summary judgment motion, referred to it and relied upon it to rule on those – on the similar  And that's the reason why I think it's important to look at some of these notices, which would actually demonstrate how simple it really was for Google to be able to address the particular notices that were before it. Some of these were before it on the preliminary injunction motion. Well, if the District Court didn't address those 95 notices, then I don't think that we would look at them in the first instance. So I don't think we need to go through them here unless one of my colleagues has a different thought. That's fine, Your Honor. But I do want to say that some of these notices as well were before the Court in form in connection with the summary – in connection with the summary judgment motions and in connection with the P.I. motions. And we have reproduced on these boards four different notices. They're found as well on pages 15, 13, 8, and 10 of Perfect Ten's reply brief. And these notices which identified infringement concerning Blogger, the first notice, AdSense, the second notice, and the last two were infringement on image search, they all satisfy section 512c3a2 of the DMCA. They identify the infringed image by providing a copy of that image. For example – But can we concentrate on the preliminary injunction? I have a question about even how we get to the DMCA issues and why they're inextricably intertwined if we're looking at the preliminary injunction standard. Okay. Your Honor, the issue becomes whether or not there was constructive notice here. Didn't the District Court just assume constructive notice? The District Court actually did not address the issue of constructive notice. It said that the – our notices did not provide constructive notice, but – and then it turned on to say that, in fact, if there was constructive notice, then there were simple measures that – there were no simple measures that could have been taken. But it seems to me the simplest measures, if the notices were sufficient, Your Honor, and if the notices complied with the DMCA, then the simplest measure would have been to remove the infringing materials. So, therefore, that's the major reason why the issue of the underlying notices is directly relevant here. You're saying that if the notices were adequate, then per se there were simple measures. I'm saying if the notices were adequate, the simple measure would have been removing the infringing images. And even if there was notice outside, even if there was knowledge outside the notices, whether or not the notices were compliant, there still were simple measures that could have been taken. And if we found that the District Court was right, that at least in certain instances, say in Group C, the DMCA notices were not compliant or were deficient under the DMCA, does that mean there weren't simple measures? No, Your Honor, because – With this?  going to say that there were simple measures that could have been taken. Because let me give you another example. There were a variety of different ways that the Court had – that Google had knowledge of infringement on its system. It was, for example, forwarding perfect tens notices to chilling effects. A simple measure that would have reduced the damage on its system could have been to stop forwarding the live links and the pictures without redacting them. It could have stopped connecting to those. It could have taken a whole variety of steps to look at the images that were on its system. It could have attempted to process our notices. It could have gotten in touch with us if our notices were allegedly deficient and, in fact, Google claimed that each and every one of our notices was deficient and never bothered to explain to us what was a compliant notice. Under the whole system of the DMCA, there's supposed to be a back and forth. Google could have gotten in touch with Perfect Ten and said, this is how you make a notice, compliant. This is what we need to do to address the significant and massive infringement on our system, and it simply did not do so. I'm sorry. Where is this requirement that they educate you as to how to be compliant with the law? Well, there is the notion that the notices are substantial. Either the notice is lawfully compliant. I'm sorry? Either the notice is lawfully compliant or it's not lawfully compliant. And if it is, then you don't need to change anything. Correct, Your Honor. And if it's not, I don't see where there is a requirement that they teach you how to be lawfully compliant. Well, I believe that there's certainly a requirement to work together to try to make this the least possible burden. There's a whole discussion of what is or isn't burdensome here. It may be a good idea or may not, but where is the requirement? Well, I think the statute does talk about that if notices are substantially compliant, then there is supposed to be on the part of the ISP discussing how those notices can be made completely compliant. I think that's 512c3b, Your Honor, but I can come back and get you the exact site during our rebuttal.  Absolutely, Your Honor. The district court said that Perfect Ten did not really present any evidence of irreparable harm, the balance of the equities or the public interest on the preliminary injunction standard. And the district court raised some question about whether we should – whether the presumption of irreparable harm was still available. And since then, we've had the Monsanto case, which sort of underlines what the Supreme Court said about the presumption of irreparable harm. Assuming that we can't presume it then, what evidence did Perfect Ten produce on irreparable harm and what evidence on balance of equities and public interest, the other steps? Your Honor, we submitted uncontroverted evidence that Perfect Ten had lost an additional $20 million since 2005. Okay. The district court said you didn't make the causal link between your financial problems or Perfect Ten's financial problems and Google's actions. Did you present any evidence on that, or do you not have to? We – well, I'm not certain whether we have to, Your Honor, but I believe that we did. We presented evidence that as a result of the massive infringement that was available on Perfect Ten's system, that we were unable to sell or sell anything that was offered by Google on its system for free. For example, we showed that the number of P-10 thumbnails on image search had increased from approximately 2,500 to 22,000 when we – before the court at that time. As a result, persons were able to link to infringing websites offering an average of 9,000 – 9,000 images. And therefore, it seems to me that we did present significant evidence of harm. We weren't – we presented – we weren't able to sell any of our product. Our revenue went down significantly.  The uncontroverted declaration of Dr. Zeta was because all of these materials was available before. Was that sort of – it was like a race of soliquitor? If you can get it for free, why buy it? Or did you have a declaration that made that link? I believe the declaration of Dr. Zeta made that link, but I think it's very logical, Your Honor, that if all these images are being downloaded for free because they're available on Perfect 10 – they're available on Google's system through image search or web search, and in fact, Perfect 10 shows that its income has significantly decreased. I think there is sort of a race of soliquitor argument there, but we also stated that it was as a result of what Perfect 10 did. Do you have any evidence that individuals who had in the past purchased protected material from your client, then stopped purchasing those items because they were available for free? I believe we have generalized evidence, Your Honor, that the number of people purchasing items decreased significantly. I can't point to a specific person who said, look, I'm no longer purchasing it, but it     So I don't know the person who said, look, I'm no longer purchasing it, but it isn't.  The other answer is, if you're a public intellectual, why bother to pay Perfect 10? So the district court also said that there was nothing on balance of equities or the public interest, that you didn't address either of those two factors. Was the district court wrong on that? I think the district court was wrong on that, Your Honor, because I think the district court in fact stated in its earlier opinion in this case that the public interest is also served when the rights of copyright holders are protected against acts likely constituting infringement. And for that matter, the balance of the equities and the public interest – the balance of the equities when there's copyright infringement, also this case law that we cited in our papers that states that under those circumstances, one is entitled to injunctive relief. So I think that the district court was incorrect there. If we're – if we have shown that we're entitled to injunctive relief because of the copyright infringement that exists here, I think we satisfy the other factors as well. Okay. Because the Supreme Court says, no, you've got to look at all four. And they reversed us on that very point. No, I understand that all four are necessary to look at. What I'm – what I'm saying is, I believe that in this circumstance, where there are millions of unauthorized downloads, where people are able to get all of these materials for free, and we have uncontroverted evidence of that fact, under those particular factual circumstances, that evidence satisfies both the irreparable – the irreparable harm, the substantial likelihood of success, and the other factors, because it is in – it is in the public interest, and the balance of the equities do favor injunctive relief under those circumstances. Let's talk a little bit about chilling effects. I'm not sure I quite understand how this works. You get a notice, a takedown notice, and then after the image is taken down, you send something to chilling effect. What exactly is it you send? Your Honor, we're not – Not you. I mean, what is it that Google sent? Google. My understanding, Your Honor, is we're sending notices identifying infringing perfect hand images to chilling effect – to Google. Google is turning around and forwarding those notices, in some cases, notices that they haven't even processed, directly at chilling effects. So it is – what they're sending to chilling effects are the things that you send them. Exactly. Not only that, Your Honor, they are then turning around and linking to the notices at chilling effects. So, for example – Have you ever heard of the word yes? Is – your answer yes? Yes. Okay, I don't want a whole story. Sorry, Your Honor. So, the things that they're moving – they're sending are entirely within your control. I mean, you could distort the images, you could put a disclaimer on them, you could put yellow polka dots, anything like that, right? The problem, Your Honor – Yes or no? Yes. Okay. So, what's the baseline? If you know that they're going to send them to chilling effects and you have it entirely within your power or your client's power to distort the images to avoid, you know, them being useful the way you did here, what's your complaint with them? Well, first of all, Your Honor, when we started sending our Group C notices, we had no idea they were being forwarded to chilling effects. They were – and we only started sending them because Perfect – because Perfect Pen's Group B notices were not being processed. Right. But we're here on a preliminary injunction, right? So, you're trying to deal with future conduct. So, now you know. And so, why is this something for which you need the Court's help? Why isn't it something with you – We need the Court's help, Your Honor, because the district court found that in this case there was direct copyright infringement. There's no evidence whatsoever in the record that these notices were, in fact, being forwarded for any research purposes. And it seems to me, whereas here the notices are continuing to be forwarded, there are tons of links to P-10 images on chilling effects still there, where we're trying to forward our notices in such a way that the images can be removed, where the images clearly identify both the infringed material and the infringing material, it seems to me under the fair use factor analysis, it's their burden, it's Google's burden. They have not satisfied that burden. This may or may not be true, but to answer my question, why do you need the Court's help? Why do you need to exercise the Court's equitable jurisdiction authority when you could solve the problem yourself? That was my question. Because, Your Honor – The answer you gave me was a legal argument as to why untitled relief, but let's – Let me add one more point then, Your Honor. It seems to me that, in addition, these notices have live links, that we that are remaining live, we can't do anything about those, Your Honor. Google – when those notices are being forwarded to chilling effects, we have to point out the links in order to send the notices in the Adobe format that will allow them to be processed. That's how we have to do it. We're sort of damned if you do, damned if you don't. If we send them in a format where they can't be processed, they're deficient, where we try to send them in Adobe where they have these live links, they not only refuse to process the notices, but they forward the live links to chilling effects. When you say live links, you mean if you click on them, they take you there? Exactly. They take you there and to various other places. Why do they have to be live links? Why can't they be dead links? Because in Adobe, Your Honor, I believe that's the way that the notices are forwarded. And you can't get Adobe to give you just simply a printed link, not a live link? I don't believe so, Your Honor, but I'm not certain about that. But if you're wrong about that, that kills your argument? I don't think it kills my argument, Your Honor, because I... I mean, why do you have to send it in Adobe? Why can't you send an image, a JPEG or something that doesn't have a live link in it? It has a full link. It gives you a full, but not something that you can actually click on. You can certainly do it in Word. You just turn off the function that turns URLs into live links. Your Honor, you could certainly do that and then it would be very... and then it would be much more burdensome for anyone to be able to process those notices because you would then have to... This would be... You're doing Google a favor by making live links. I'm not talking sarcastically, I'm just... You're trying to make it easier on them to... Yes, Your Honor. I think using Adobe makes it a lot easier. Okay. If there are no other questions, now I'd like to reserve my time. You have no time to reserve. We'll see if we give you some time afterwards. Thank you, Your Honor. We'll hear from the other side. Thank you, and may it please the Court, Andrew Shapiro for the appellee, Google. This case is here on the appeal of a denial of a motion for a preliminary injunction, and as I think many of the Court's questions have suggested, that's a critical fact. And it's critical for at least four reasons. The first is that absent a showing of irreparable harm, the plaintiffs cannot prevail, and... What's wrong with the res ipsa loquitur argument? I mean, it certainly has a lot of common sense appeal because we're reviewing the district court's opinion for, you know, abuse of discretion. So we would have to find that it made an error on that. But you say, well, if I can get it for free just by putting a model's name into the Google search engine, why am I going to subscribe and buy it? I mean, that has a lot of common sense appeal. Sure, except that the record contains evidence that Perfect Ten has never made money, Your Honor. It has never made money. And the fact that a magazine in this day and age is having some difficulties, financial or otherwise, is not evidence that it is being irreparably harmed by Google. It would be simple enough to put in a declaration that has something more than speculation, that has some expert analysis providing causality. But even if, even if there were a showing that Perfect Ten was losing money because of Google, and there is no such showing in the record, that's not irreparable harm. That's compensable. They make a showing that they're losing money. They've always been losing money. It's the causal, and they're losing more money more rapidly as the thumbnails increase. It was the causal link that the district court found was lacking. And they said, well, we stated it. There's a declaration, and it's also common sense. So I don't think that the evidence shows that the rate of losing money has increased. But even if it were, and even if this Court were willing, and I don't think it should, to overlook the causation problem, that's still not irreparable harm because it's money damages. So they haven't made out that element of showing. They've also delayed two years. And the cases of this Court suggest that a delay of far more, of far less, rather, is enough to defeat any claim of irreparable harm. But there are other reasons why the posture of the case was sent back to the district court to the time that there was the second motion for preliminary injunction. And the timing of it is interesting and worth attention because summary judgment papers of the district court would have been very unhappy with them if they had, if they had filed a preliminary injunction motion right afterwards. You know, you have to be very careful. District judges can be pretty touchy. You probably know that. You practice in district court. And they don't like to have their dockets burdened with unnecessary or premature motions. That is certainly true. And, unfortunately, this was an unnecessary and premature motion. This motion was filed. I can't take the position that it's both premature and too late. I mean, two minutes ago you said, oh, they waited two years. Now you're saying it's premature. I am sorry. My point, Your Honor, was that they pulled the trigger on this on the eve of a decision about summary judgment. This Court will have the opportunity and these plaintiffs will have the opportunity to raise the objections they might have to Judge Matz's rulings about the content of the notices in due course. This case is still playing itself out. Your Honor asked early on what about the Group B notices, for example, and counsel for the plaintiffs said, well, we're not sure which ones were ruled appropriate or not appropriate. That's because they ran in, sought a preliminary injunction, and that was supposed to be the next step in the district court below. But isn't that just on the DMCA notices? So it's just on Google's Safe Harbor, correct, the summary judgment pending before the district court, or is it also on the infringement claims? Summary judgment is on the DMCA Safe Harbor only. So even if Google prevailed, the district court still has to fashion injunctive relief. It's just limited by the DMCA. It's limited. And importantly, and this is another reason why this Court need not reach the issues underlying plaintiff's arguments, there's nothing left to enjoin. There is nothing in any sufficient or intelligible notice that has not been processed and that has not been disabled. And that's an extremely ---- That's a dispute, right? That's what's in dispute? I mean, the district court didn't agree with you on that point. Even the Group B notices, my understanding is that even the remaining Group B notices and even the some of the difficult-to-understand notices have now been processed. How about the 95 notices that they claim the district court overlooked in the preliminary injunction motion? Most of those have now been processed as well. They have not yet been considered by the district court. But Google has always, throughout, had a simple stance in this case and in its dealings with Perfect Ten. It has said, tell us what the material is, give it to us in some clear way, show us that you own it, and we'll take it down. So we have gone above and beyond in the case of many of these defective notices. We don't have an obligation to. But we have done that. And there was a dialogue between Judge Kaczynski and the lawyer for the plaintiffs earlier about whether there's an obligation for us to work with the plaintiffs to try and help them solve the defects in their notices. And the record is very clear on that, that Google has, whether we're required to or not, reached out to plaintiffs time and time again. And there are citations for this in the supplemental excerpts from record at page 1780. You'll find an email from Google politely asking for soft copy spreadsheets, which is all we want. Let me just take a step back for a minute. And this is what I was struggling with on the contributory infringement argument and the simple measures argument. Because Google is so effective as a search engine, I mean, they've now really assisted all of these infringing sites to multiply themselves immensely. I don't think there can be a big dispute about that. And then Perfect 10 says, well, look, you have this similar images search. You could go through, get all of the images that they've indicated are infringing, that only they have the right to display, and you could block all those URLs. You know, that argument has some appeal, given Google's current existing technology that it's using. So why isn't, when you look at, is Google, does it know of the infringement? Yes. And could it take steps to block these sites? And they argue, yes, they have the technology already. Why doesn't that meet the contributory infringement standard or test? Judge Matz did not abuse his discretion to find, A, that the declaration submitted by Dr. Zeta was purely speculative about the powers of image recognition. But more importantly, image recognition is not license recognition. It's not fair use recognition. But if Perfect 10, I know you made that argument. But if Perfect 10 says, look, we give our model a different name, an alias, so if you find anything with that name or any image with that name, it's only we're the only ones who have the right to use it. And then you can get a counter notice if you mistakenly take down an image where the person has a license. Unfortunately, it's simply not true that they're the only people entitled to use those likenesses. I'll direct the Court to the supplemental excerpts of record at pages 2136 to 2196, where we have a whole series of counter notifications. Pardon me? Do you know what volume it is? Do you know which volume? I think it's in our first. Is it a supplemental? It's a supplemental. 2136 to 2196. 136? 2136 to 2196, volume 10. Is it volume 10? Yes. Go ahead. At those pages, the Court will find many examples of counter notifications, one in which an author points out he holds licenses for the images at issue, another in which the author explains that he only came to learn of the takedown from the Chilling Effects website. Similarly, a counter notification in which the author describes Perfect Ten's DMCA notice as vague and incomprehensible and says, I quote, you can't even tell which image or file they're complaining about, and neither can we. So the mere fact that there's some speculation in the record suggesting that there's image recognition technology out there, even if it didn't have the other defects, evidentiary defects, would also suffer from the fact that image recognition technology is not infringement recognition technology. Well, they did have numerous pages showing similar image, and I know that Google does have that capability, and they had the pages there that were sent to the district court, and there was the McFadder declaration, and there was the 10i material. So they had more than the Zeta declaration. I'm wondering whether that was not shown to the district court or why the district court said that all that was presented was the Zeta declaration. Here's what the McFadder declaration said, Your Honor. It said, quote, Google appears to have image recognition technology, and he said that based on his use of image search. He has no knowledge of Google technology. He was never disclosed as an expert, no methodology or basis for the opinion, and he does not address, sorry, and O'Connor does not address image recognition technology. We find ourselves here in the United States Court of Appeals battling about these evidentiary issues, and I think that that illustrates why this fight is in the wrong courtroom, unless there's some strong basis for an injunction. I mean, I look at these exhibits, and I feel like I've walked into a district court, but these are not the facts that were found by the district court, and the district court's findings were not clearly erroneous. They were, in fact, we believe clearly correct. You know, the case can be disposed of on other grounds as well. The fact that there was no showing, not even a showing, but there was no argument made below about public interest or balance of the equities. You asked questions about that, Judge Ikuda. Judge Matz at page 10027 of the excerpts of record in his decision, the decision on appeal, stated that Perfect Ten made no argument, zero, about public interest or balance of the equities in its motion or its reply brief. Why isn't that disposed of the issue? Why isn't that waiver? The standard of review here as well is one that I think counsels against getting deeply into the merits of this notice or that notice or whether Google can use image recognition technology. As I said earlier, there was only a partial summary judgment order issued below. So those issues, even in the context of the DMCA, can find their way to this court in due course, but not at this time. The ---- Talk a little bit about Blager. Yes. That's sort of a different case in a way. Sure. First of all ---- I mean, it presents a discrete issue. It wasn't up before the Court before. First of all, since we are again in the preliminary injunction posture, there's been no showing of irreparable harm relating to Blager. As to underlying liability, it involves only passive processing of users' uploads. So there's little likelihood of success on direct infringement and on ---- But those images are on Google's own servers. Yes. Many of them are. Yes. And just as the Court said ---- The issue was left open. Correct. The issue was left open. The weight of authority, in fact, I think all the authorities, found that passive uploads such as this do not result in the strict liability, which is the hallmark of direct infringement. There's the Coast Star case. There are the district court cases that we cite in our brief. But beyond that, there is no evidence, and Judge Matz cited this, of any Blager URLs that Google didn't disable. Actually, the only ones were in Group C, which has its own problems. But other than those that were in Group C, there are none that were not disabled by Blager. So there's nothing to ---- by Google, there's nothing to enjoin here. Could you address the district court's discussion on the vicarious liability on the financial benefit and whether the use of the AdSense and the clicks is enough to give a direct financial or a direct enough financial benefit? It's not enough for direct financial benefit. As the Ellison case holds, there has to be a causal link between the infringement or the presence of the infringing material and the financial benefit. That's the work that is done by the word direct. So the images of the women attract people to the site, and then when they're there, they click on the ads. Isn't that the whole idea behind AdSense? The important point for direct financial benefit is that there has to be some differentiation between the draw from legitimate material and infringing material. Are you getting a direct financial benefit from infringing activity or are you just getting the same sort of financial benefit you would get from running your site in any event? I think the authorities are solid on that, and this Court's Ellison decision certainly found that, I'm going to quote from it here, the essential aspect of the direct financial benefit inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps. And it held in that case that this Court held, rather, that there was not a direct financial benefit from providing access to infringing material where the record lacked evidence that the defendant attracted or retained subscriptions because of the infringement specifically. And that's not satisfied here. There's certainly nothing in the record that would support that. Now, of course, as you know, Your Honor, vicarious liability also has a second independent factor, and that's the writer ability to control the infringement. And I think with Blogger in particular, that test can't be met as well. Google does not control what people post on Blogger. It does take down infringing material. I would like to note, if you use Blogger, you have to click on an agreement or agree to the terms of use. And I am guessing the terms of use involve promises not to display illegal material. Yes, yes. Infringing material, defamatory material, right? Yes. I am just guessing, but I've read enough of those licenses. It's true. I've scrolled down often enough to know that. You're the only person who reads to the end of them, Your Honor. Most people just click right through. But, yes, Your Honor, you're correct. I didn't say I read to the end of them. I just said I read enough. The things in the book are interesting. That's absolutely true. But mere control over the site is not control over the infringing activity. How is that different than kicking somebody off a flea market? Well, the FONO visa, in FONO visa, first of all, and I know that Your Honor, in the dissent in the visa case, questioned this, but there is merit to the argument that in a controlled, a physical spot, they can easily be patrolled. People walk through and they see what's there. They're massively aware of what's going on in the flea market. That presents a different situation than a blog. But even if it didn't, even if the record, as I stated before, shows. I thought you were going to tell me how that's different. You just said, oh, that's different. Oh, well, okay. How is it different? I mean, you know, you're not going to rely on the difference between physical space  No, not on that difference, Your Honor. It's a difference of the size, the scope, and the ability simply by walking through the flea market, for example, to see what's going on there. Google has no obligation to patrol Blogger. But in any event, it has taken down anything for which it has received an intelligible notice from P-10 from Blogger. There is no infringing material still on Blogger that has a URL that can be discerned. So that's your answer. I just wanted to know what your ultimate answer was. And how about chilling effects? Does Google really have to send live links to chilling effects? Your Honor was absolutely correct in that this is a problem utterly of P-10's own making. Google has asked P-10 again and again, A, stop sending images like this in your DMCA notices. We don't need them. They make our job harder, in fact. Please just send us soft copy spreadsheets. B, don't send them in Adobe. We don't want them in Adobe. That actually makes it harder for us. And in terms of working back and forth, as I said, starting at page 1780 in the supplemental excerpts, there's a whole e-mail chain back and forth in which we're trying to get them to be cooperative with us. There is no need for them to have this self-inflicted wound unless perhaps they would rather be in litigation than in a money-losing, you know, soft core adult entertainment business. It's inexplicable to us why they keep doing it. It's inexplicable to us. And when Plaintiff's Counsel stood up a few moments ago and said, well, we had no idea that they were The short answer, as I said, you are not asking for live links. We are not asking for live links. And you don't like Adobe. You don't like PDFs. We want soft copy spreadsheets so that we can copy things out of them rather than have to manually type them in. And we've said this to Perfect Ten a hundred different ways, and the vast majority of content owners out there understand it, even if they have lots of content, and they provided it, and we work with them to do our job and disable the links. But when Plaintiff's Counsel said a few minutes ago that he had no idea until recently that Perfect Ten had no idea that their notices were being forwarded to Chilling Effects, I truly had to scratch my head because Perfect Ten itself has used Chilling Effects and cited it in litigation. In this litigation, the Court can look at the Chilling Effects amicus brief, which has some of those citations. So maybe I'm just confused about the timing, but that statement is hard to take seriously when they've used Chilling Effects themselves in litigation. Thank you. You're out of time. We'll give you a minute for a bottle if you wish to take it. About a minute. A minute. With respect to Blogger, we've submitted uncontroverted evidence that there are still 565 blogspot sites that are hosting thousands of Perfect Ten images. So the notion that Google has done everything is simply incorrect. There is irreparable harm going forward. With respect to the issue of image recognition, Judge Akuta got it exactly right. The way to deal with this is the counter notification process, and Google can use it to see similar image function. With respect to the issue of whether or not we've shown irreparable harm, we've shown uncontroverted evidence that we're near bankruptcy. Putting the causal issue aside for the moment, the Supreme Court in Duran specifically said that that is sufficient to get you irreparable harm. And finally, with respect to the right and ability to control, in fact, Google is able to take down and do whatever it wants with these blogspot sites. So it seems to me that's direct infringement right there. Mr. Mousner has asked if he could have a minute as well. I have a question. Yes. If we were to send this back to district court and direct the issue of a preliminary injunction, can you bond around it? Can your client bond it? I believe so. I must admit, Your Honor, I have not asked my client that specific question, but I believe we would be able to do so. That should not prevent Your Honors from sending this back to the district court. I'm sorry. Mr. Mousner wants to speak? We have one minute left. All right. You'll present somebody else? I'm sorry? You'll present the same client? Yes, Your Honor. Okay. We'll hear a minute. The provision of the DMCA requiring cooperation is 512C3BI. 512C3BI. The show similar images was shown to the district court, Judge Ikuda. It's at ER 40211 to 40235, I believe. Google has repeatedly told Perfect 10 that the spreadsheet notices are all deficient. That's why Perfect 10 started sending the Adobe Group C notices. And the last thing, Your Honors, is Google has cited to pages 2136, 2196, Volume 10, that's 60 pages of counter notifications. Perfect 10 has sent thousands, tens of thousands of URLs, and there have only been at most 60 counter notifications that they submitted. That's all. Thank you, Your Honor. Thank you, Your Honor.
judges: Kozinski, Hawkins, Ikuta